## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

EKERE INYANGETTE,

        *Plaintiff*,

   v.

DEPARTMENT OF MOTOR VEHICLES,
DISTRICT OF COLUMBIA,

        *Defendant*.

Civil Action No. 24 - 2584 (LLA)

## <u>MEMORANDUM OPINION</u>

Plaintiff Ekere Inyangette, proceeding pro se, brings this suit against the D.C. Department of Motor Vehicles ("DMV"), alleging that it violated 42 U.S.C. § 1983 by revoking his driver's license. ECF No. 1, at 3; ECF No. 1-1. The District of Columbia moves to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). ECF No. 7. For the reasons explained below, the court will grant the motion and dismiss the case.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual allegations drawn from Mr. Inyangette's complaint, ECF No. 1, are accepted as true for the purpose of evaluating the motion before the court, *Jerome Stevens Pharms., Inc. v. Food & Drug Admin.*, 402 F.3d 1249, 1250 (D.C. Cir. 2005). The court further takes judicial notice of public records of other proceedings, *Abhe & Svoboda, Inc. v. Chao*, 508 F.3d 1052, 1059 (D.C. Cir. 2007), and of facts that "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned," *Detroit Int'l Bridge Co. v. Government of Canada*, 133 F. Supp. 3d 70, 84 (D.D.C. 2015) (quoting Fed. R. Evid. 201(b)(2)).

In February 2024, Mr. Inyangette was arrested for driving under the influence and related offenses in Harford County, Maryland.  ECF No. 1-3, at 1.[1]  Because he refused to submit to chemical testing, the Maryland Department of Transportation issued him an administrative conviction, which was forwarded to the District of Columbia, his home jurisdiction.  ECF No. 7-1, at 2; *see* ECF No. 7, at 2 n.1.[2]  In May, the D.C. DMV informed Mr. Inyangette that since his "driver license was administratively revoked by . . . another jurisdiction's administrative agency that oversees driver licenses as a result of [his refusal to submit to chemical testing]," he was "required to enroll in the DC Ignition Interlock Device (IID) Program" pursuant to D.C. Code § 50-2201.05a.  ECF No. 7-2, at 2.  The notice contained instructions for enrolling in the Ignition Interlock Device Program and warned Mr. Inyangette that his driver's license would be revoked and his vehicle registration would be suspended if he did not enroll in the program within thirty days.  *Id.*

In June, Mr. Inyangette went to trial on the criminal charges against him in Maryland state court and was found not guilty.  ECF No. 1-3, at 2-3.  After the trial, Mr. Inyangette provided a copy of the verdict to the D.C. DMV, but the DMV did not reinstate his license.  *Id.* at 1.

In September 2024, Mr. Inyangette filed this action against "Dept. of Motor Vehicle, Dist. of Columbia," alleging that the revocation of his license violated 42 U.S.C. § 1983.  ECF No. 1. He seeks the reinstatement of his driver's license and $1,000,000 in damages.  *Id.* at 4.  The District

---

[1] The citations to ECF Nos. 1-2, 1-3, 7-1, and 7-2 refer to the ECF-generated page numbers at the top of each page, rather than any internal pagination.

[2] *See* Am. Ass'n of Motor Vehicle Adm'rs, AAMVA Code Dictionary Manual 5.2.5, at 31, https://perma.cc/MYB8-WGNC (describing an A12 violation as "refus[al] to submit to test for alcohol").

of Columbia moves to dismiss for failure to state a claim.  ECF No. 7.[3]  The court issued two

*Fox/Neal* orders in which it directed Mr. Inyangette to file a brief in opposition to the District's

motion and advised him of the consequences of failing to do so.  ECF Nos. 9, 10.  Despite these

orders, Mr. Inyangette did not respond to the District's motion to dismiss.

## II.    LEGAL STANDARDS

Under Rule 12(b)(6), the court will dismiss a complaint that does not "contain sufficient

factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft*

*v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  In

evaluating a motion under Rule 12(b)(6), a court accepts all well-pleaded factual allegations in the

complaint as true.  *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Atherton*

*v. D.C. Off. of the Mayor*, 567 F.3d 672, 681 (D.C. Cir. 2009).  Although the plausibility standard

does not require "detailed factual allegations," it "requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

Nor will "'naked assertion[s]' devoid of 'further factual enhancement'" suffice.  *Iqbal*, 556 U.S.

at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557).

Pleadings by pro se litigants are generally held "to less stringent standards than formal

pleadings drafted by lawyers."  *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam).  This

liberal construction "is not, however, a license to ignore the Federal Rules of Civil Procedure."

*Sturdza v. United Arab Emirates*, 658 F. Supp. 2d 135, 137 (D.D.C. 2009).  Thus, "the complaint

---

[3] In the alternative, the District seeks summary judgment.  ECF No. 7, at 1, 8-9.

must still 'present a claim on which the Court can grant relief'" in order to defeat a motion to dismiss under Rule 12(b)(6). *Smith v. Scalia*, 44 F. Supp. 3d 28, 36 (D.D.C. 2014) (quoting *Budik v. Dartmouth-Hitchcock Med. Ctr.*, 937 F. Supp. 2d 5, 11 (D.D.C. 2013)).

## III.    DISCUSSION

In its motion to dismiss, the District of Columbia argues that the D.C. DMV is *non sui juris*—that is, not an entity capable of being sued in its own name—and should be dismissed from the suit.  ECF No. 7, at 4.  The District further contends that Mr. Inyangette has failed to state a claim under Section 1983 because he fails to allege a violation of his rights stemming from a local policy or custom.  *Id.* at 4-9.  The court agrees with the District.

### A.    *Non Sui Juris*

Mr. Inyangette names "Dept. of Motor Vehicle, Dist. of Columbia" as Defendant in this case.  ECF No. 1, at 1.  "[I]n the absence of explicit statutory authorization, bodies within the District of Columbia government are not suable as separate entities," and the suit must instead be brought against the District itself.  *Scahill v. District of Columbia*, 271 F. Supp. 3d 216, 231 (D.D.C. 2017) (alteration in original) (quoting *Sibley v. U.S. Sup. Ct.*, 786 F. Supp. 2d 338, 344 (D.D.C. 2011)).  The D.C. DMV is not authorized to be sued in its own name.  *Sobin v. District of Columbia*, 480 F. Supp. 3d 210, 210 n.1 (D.D.C. 2020) (collecting cases finding that the D.C. DMV is *non sui juris*).  "When a pro se plaintiff erroneously names a [District of Columbia] agency instead of the District of Columbia itself, it is appropriate to automatically substitute the District for its agenc[y]."  *Hunter v. D.C. Child & Fam. Servs. Agency*, 710 F. Supp. 2d 152, 157 (D.D.C. 2010).  Accordingly, the court will proceed as if Mr. Inyangette had named the District of Columbia as Defendant.

**B.      Municipal Liability**

Section 1983 provides a cause of action against any "person who, under color of . . . State . . . or the District of Columbia [law]" deprives an individual of the "rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. A municipality like the District is a "person" for purposes of Section 1983. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 690 (1978) (holding that "municipalities [are] included among those persons to whom § 1983 applies"); *Atchinson v. District of Columbia*, 73 F.3d 418, 423-24 (D.C. Cir. 1996) (permitting § 1983 claims against the District to proceed); D.C. Code § 1-102 (establishing the District as an entity that can "sue and be sued" as a "municipal corporation"). To state a claim against the District under Section 1983, the plaintiff must plead: (1) "a violation of his rights under the Constitution or federal law" and (2) "that the municipality's custom or policy caused the violation." *Warren v. District of Columbia*, 353 F.3d 36, 38 (D.C. Cir. 2004); *see Monell*, 436 U.S. at 694. Mr. Inyangette has done neither.

**1.      Mr. Inyangette has not alleged a violation of the Constitution or federal law**

Mr. Inyangette claims that he has been "deprived of [his] driving privileges without a cause," ECF No. 1-1, and has "no remedy to dispute" his license revocation or seek reinstatement, ECF No. 1-3, at 1. Liberally construing his pleadings, the court understands Mr. Inyangette to be raising either a procedural or substantive due process claim. *Haines*, 404 U.S. at 520. Under either theory, the court concludes that he has failed to plausibly allege facts that would establish a violation of the Constitution or federal law.

*Procedural due process.* The Fifth Amendment to the U.S. Constitution guarantees that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "'The fundamental requisite of due process of law is the opportunity to be heard'

at 'a meaningful time and in a meaningful manner.'" *Alaska Commc'ns Sys. Holdings, Inc. v. Nat'l Lab. Rels. Bd.*, 6 F.4th 1291, 1298 (D.C. Cir. 2021) (quoting *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970)).  When evaluating a procedural due process claim, the court must "first determine whether constitutional safeguards apply at all, *i.e.*, whether a private party has a property or liberty interest that triggers Fifth Amendment due process protection." *Reeve Aleutian Airways, Inc. v. United States*, 982 F.2d 594, 598 (D.C. Cir. 1993).  Then, the court evaluates whether the deprivation of interest occurred without process.  *Mathews v. Eldridge*, 424 U.S. 319, 333-35 (1976); *see Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) (explaining that the process due is "flexible and calls for such procedural protections as the particular situation demands").

On the first prong, it can hardly be disputed that Mr. Inyangette has a protected interest in keeping his driver's license.  *See Dixon v. Love*, 431 U.S. 105, 112 (1977) (noting that "the Due Process Clause applies to the deprivation of a driver's license by the State"); *see also Quick v. Dep't of Motor Vehicles*, 331 A.2d 319, 321 (D.C. 1975).  On the second, Mr. Inyangette alleges that the D.C. DMV revoked his driver's license "without a cause."  ECF No. 1-1.  He contends that, although he was found not guilty of driving under the influence in Maryland, the D.C. DMV refused to reinstate his license.  ECF No. 1-3, at 1.  The problem for Mr. Inyangette is that his allegations are belied by record materials that the court may consider on a Rule 12(b)(6) motion. *Kaempe v. Myers*, 367 F.3d 958, 963 (D.C. Cir. 2004) ("Nor must we accept as true the complaint's factual allegations insofar as they contradict exhibits to the complaint or matters subject to judicial notice."); *see Peart v. Latham & Watkins LLP*, 985 F. Supp. 2d 72, 81 (D.D.C. 2013) (taking judicial notice of facts contained in District of Columbia agencies' official letters when deciding

a motion to dismiss because they "[could] be accurately and readily determined" and their accuracy "[could not] reasonably be questioned" (quoting Fed. R. Evid. 201(b)(2))).[4]

Mr. Inyangette was arrested for driving under the influence in Maryland in February 2024. ECF No. 1-3, at 1. But that was not the reason why the D.C. DMV revoked his license. Instead, as the D.C. DMV explained to him in its May 2024 letter, his "driver license was administratively revoked by . . . another jurisdiction's administrative agency that oversees driver licenses"—the Maryland Department of Transportation—because he had "refus[ed]" to submit to chemical testing. ECF No. 7-2, at 2; *see* ECF No. 7-1, at 2. District of Columbia regulations allow the DMV Director to revoke a driver's license in such circumstances, *see* 18 D.C.M.R. §§ 300.6 and 301.2, and Mr. Inyangette acknowledges that he was notified that revocation was a possibility, ECF No. 1-3, at 1 ("I was notified that my license was pending revocation due to the alleged offense."). But, even then, the revocation of Mr. Inyangette's license was not a foregone conclusion. Instead, in the same letter, the D.C. DMV informed Mr. Inyangette that he could avoid revocation by enrolling in the Ignition Interlock Device Program, and the agency provided him with instructions on how to do so. ECF No. 7-2, at 2; *see* D.C. Code § 50-2201.05a.

---

[4] Pursuant to Federal Rules of Evidence 201(b)(2), 201(c)(1), and 201(d), the court takes judicial notice of Exhibit 2 of Defendant's motion to dismiss. ECF No. 7-2. The District of Columbia DMV's Official Notice of Proposed Revocation contains facts that "can be accurately and readily determined from [a] source[] whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Had Mr. Inyangette wished to contest the validity of the D.C. DMV's letter, he forfeited that opportunity by failing to respond to the motion to dismiss after the court issued two *Fox/Neal* orders. *See* ECF No. 10 (warning Mr. Inyangette that if he failed to respond to the motion to dismiss, the court could treat the motion, or any arguments made in the motion, as conceded); ECF No. 9 (same). Although the court finds that the facts in Exhibit 2 can be accurately determined by an unquestionably accurate source, Mr. Inyangette has conceded any argument to the contrary. ECF No. 10, at 2.

Mr. Inyangette does not allege that he enrolled in the Ignition Interlock Device Program but still had his license revoked or that he otherwise challenged the requirement that he participate in the Ignition Interlock Device Program. *See* ECF No. 7-2, at 2 (informing Mr. Inyangette how he could contact the D.C. DMV with questions). Instead, Mr. Inyangette alleges that his license was revoked due to the "alleged offense" of driving under the influence, and he points to the not guilty verdict he received on that charge at his Maryland trial. ECF No. 1-3, at 1. But that argument misunderstands the basis for his license revocation. The D.C. DMV informed Mr. Inyangette that he risked having his license revoked under D.C. Code § 50-2201.05a, ECF No. 7-2, at 2, which both required his participation in the Ignition Interlock Device Program upon his refusal to submit to chemical testing, D.C. Code § 50-2201.05a(b-3)(1), and permitted revocation for his failure to enroll in the program, *id.* § 50-2201.05a(d)(2). By focusing on his Maryland acquittal and ignoring the requirement that he enroll in the Ignition Interlock Device Program, Mr. Inyangette fails to allege that the deprivation of his driver's license occurred *without* process. *See Mathews*, 424 U.S. at 333.

*Substantive Due Process*. Substantive due process "protects those fundamental rights and liberties which are, objectively 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Washington v. Glucksberg*, 521 U.S. 702, 720-21 (1997) (citations omitted) (first quoting *Moore v. E. Cleveland*, 431 U.S. 494, 503 (1977) (plurality opinion); then quoting *Palko v. Connecticut*, 302 U.S. 319, 325, 326 (1937)). To allege a violation of substantive due process, a plaintiff must "show that state officials are guilty of grave unfairness in the discharge of their legal responsibilities." *Silverman v. Barry*, 845 F.2d 1072, 1080 (D.C. Cir. 1988). The behavior must be "so egregious, so outrageous, that it may fairly be said to shock the contemporary

conscience." *Est. of Phillips v. District of Columbia*, 455 F.3d 397, 403 (D.C. Cir. 2006) (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 847 n.8 (1998)).

The D.C. Circuit has recognized two forms of "grave unfairness" that would qualify for relief under Section 1983: (1) "a substantial infringement of state law prompted by personal or group animus," and (2) "a deliberate flouting of the law that trammels significant personal or property rights." *Silverman*, 845 F.2d at 1080. When evaluating a Section 1983 claim, the court must "focus on the allegations in the complaint to determine how [the plaintiff] describes the constitutional right at stake and what the city allegedly did to deprive [him] . . . of that right." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992).

In his complaint, Mr. Inyangette alleges neither "personal or group animus" nor "a deliberate flouting of the law" in the D.C. DMV's decision to revoke his driver's license. *Silverman*, 845 F.2d at 1080; *see generally* ECF No. 1. Nor does he allege that the District has engaged in behavior "so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *Est. of Phillips*, 455 F.3d at 403 (quoting *Lewis*, 523 U.S. at 847 n.8). Accordingly, Mr. Inyangette has failed to state a claim for a substantive due process violation under Section 1983.

## 2.    Mr. Inyangette has not alleged a municipal custom or practice

Even if Mr. Inyangette had alleged a predicate violation of the Constitution or federal law, he has failed to allege a municipal custom or practice—that is, "that the municipality's custom or policy caused the violation." *Warren*, 353 F.3d at 38. "[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue," *City of Canton v. Harris*, 489 U.S. 378, 385 (1989); a municipality *cannot* be held liable under Section 1983 through *respondeat superior* or vicarious liability, *Monell*, 436 U.S. at 691.

Accordingly, the plaintiff must show an "'affirmative link'" between the constitutional violation and the municipal policy or custom, "such that [the] municipal policy was the 'moving force' behind the constitutional violation." *Baker v. District of Columbia*, 326 F.3d 1302, 1306 (D.C. Cir. 2003) (first quoting *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (plurality opinion); then quoting *Harris*, 489 U.S. at 389).

To establish the required link, a plaintiff can allege (1) "the explicit setting of a policy by the government that violates the Constitution," (2) "the action of a policy maker within the government," (3) "the adoption through a knowing failure to act by a policy maker of actions by his subordinates that are so consistent that they have become 'custom,'" or (4) "the failure of the government to respond to a need (for example, training of employees) in such a manner as to show 'deliberate indifference' to the risk that not addressing the need will result in constitutional violations." *Id.* (citations omitted).  Mr. Inyangette has not alleged anything of the sort that would allow the court to find an "affirmative link" between the wrong of which he complains and any municipal policy or custom.  Indeed, his complaint is entirely silent on this score.

## IV.    CONCLUSION

For the foregoing reasons, the court will grant Defendant's Motion to Dismiss, ECF No. 7. A contemporaneous order will issue.

_____
LOREN L. ALIKHAN
United States District Judge

Date:   September 23, 2025